[No. B172387. Second Dist., Div. One. Nov. 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR TOSCANO, Defendant and Appellant.

## COUNSEL

George P. Hobson, Jr., for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael C. Keller and Jack Newman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL, J.**—Pursuant to a negotiated plea, Arthur Toscano pled guilty to one count of spousal abuse and admitted he had suffered one prior strike conviction and served one prior prison term.[1] He was sentenced to state prison for a term of five years (two years for the current offense, doubled for the strike, plus an additional year for the prior prison term). Toscano appeals, claiming the trial court should have enforced his plea agreement by permitting him to move to strike the prior conviction allegation both on *Romero* and constitutional grounds. We agree and therefore reverse.

---

[1] Toscano took a woman with whom he had been romantically involved from her home by force and to a motel where they had sex. He was charged with burglary, dissuading a witness from reporting a crime, kidnapping, and rape, with allegations that he had suffered one prior serious felony conviction that also qualified as a strike and served two prior prison terms. (Pen. Code, §§ 667, subds. (a), (b)–(i), 667.5, subd. (b).)

## DISCUSSION

### A.

Toscano (represented by George P. Hobson, Jr.) and the prosecutor (Deputy District Attorney Jennifer Gowan) agreed in a written plea agreement that: "Defendant & Prosecution agree that Defendant shall have the right to *a motion to strike prior*. If the prior is stricken[,] Defendant is facing a maximum of 3 years. If the prior is invalid[,] the Defendant's exposure is three years at 50/50 time. [¶] DA to dismiss Counts 1 through 4. If the prior is valid[,] Def[endant] is facing 5 yrs." (Italics added.)

On the day the agreement was executed (October 10, 2003), Deputy Gowan told the trial court (Hon. Charles Horan) the terms of the disposition and said, "We're asking to be sent to Department S for sentencing and a *Romero* motion." In questioning Toscano about the agreement, the court asked (among other things) whether he had read the "two-page waiver and plea form" and Toscano said he had.[2] As agreed, Toscano then changed his plea to guilty to a spousal abuse count added by amendment and admitted one strike and one prison term allegation.

### B.

As contemplated by his plea agreement, Toscano filed a "motion to strike [the] prior." The motion, filed on December 16, asked the court to strike the prior (1) in the interests of justice (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]), and (2) on the constitutional ground that the record in the prior case did not show on its face that Toscano, then 16, had knowingly, intelligently, and voluntarily waived his rights before he pled guilty in the prior case (*People v. Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904]).

In opposition filed on November 14—a month *before* Toscano filed his motion—Deputy Gowan urged the court to deny the anticipated *Romero* motion but offered nary a word about the constitutional validity of the prior, and no additional papers were filed by Deputy Gowan in response to Toscano's actual motion.

---

[2] Although the written plea agreement is not signed by Deputy Gowan, we must presume (on a record that does not suggest otherwise) that she had at this point read the writing and agreed that it accurately stated the terms of the negotiated plea. For this reason, we disregard the Attorney General's contention that Deputy Gowan never "agreed to a motion to strike that would be based on grounds other than *Romero*." If at the time a negotiated plea is presented to the trial court the prosecutor has not read the agreement signed by the defendant, that fact ought to be reflected in the record.

## C.

The hearing on the motion was held in Department S (Hon. Robert M. Martinez) on December 23. Toscano and Mr. Hobson were present, but Ms. Gowan was not and the People were instead represented by Deputy District Attorney Geanene Yriarte.

The trial court told the lawyers, "I have read your motion to strike. I've also read the People's response," then asked if there was anything to add. Deputy Yriarte argued the *Romero* issue, then said she would submit. When the court asked "about the motion to strike based upon constitutional grounds," Deputy Yriarte responded with a question suggesting she might not have read Toscano's written motion: "What specifically is the court looking for in regards to that?" The court responded thus: "The prior strike is being attacked on constitutional grounds. The defendant has alleged in his affidavit support[ing the] motion that in 1985, when he was found unfit and treated as an adult that, at the time of this plea, he was not advised of his constitutional rights nor did he waive those rights. For further support, they have provided documentations relating to that conviction which in my inspection do not reflect an advisement or a waiver of his constitutional rights."

Deputy Yriarte apologized, told the court she thought "this was just [a *Romero* motion]," and asked for a moment to confer with Mr. Hobson. Back on the record, there followed a lengthy discussion in which Deputy Yriarte insisted that Toscano had somehow waived his right to raise the constitutional issue, and she asked for a "full hearing" at which Deputy Gowan would be present. Mr. Hobson explained that there had been no such waiver, that the written plea agreement was plain on its face, and that there were no limitations on the scope of the motion to strike.

The trial court found an ambiguity in the record based on Deputy Gowan's shorthand comment at the time the plea was taken (that the matter was to be sent to Department S for "sentencing and a *Romero* motion"), expressed concern about holding the parties to an ambiguous agreement, suggested the parties should talk and "come to some resolution," but ultimately concluded that the only course of action was to set aside the plea agreement. After an unreported chambers conference, there was the following exchange on the record:

"MR. HOBSON: . . . I talked with my client, and based upon our discussion in chambers and the discussion with the District Attorney, *my client does not wish to withdraw his plea at this time, especially in light of*

*the four or five felony charges that he was facing.* He wishes to proceed today on the sentencing . . . and is willing to submit it on the *Romero* motion.

"THE COURT: Is that what you want to do, Mr. Toscano?

"[TOSCANO]: Yes, Your Honor.

"THE COURT: Mr. Toscano, I want you to understand that by proceeding with this, you are giving up your right to have the motions that were brought forth resolved. I have not made a determination as to whether the motion was well founded. *I think there are substantial issues that have to be addressed.* On the other hand, this is a negotiated settlement. *Your option is to un[do] the agreement and return to the position you were in prior to that with whatever outcome would come.* [¶] Are you certain that you want to proceed under the agreement and give up this motion to challenge the constitutionality of that prior?

"[TOSCANO]: Yes, Your Honor." (Italics added.)

With that, the court denied the *Romero* motion and sentenced Toscano.

### D.

■ We agree with Toscano that, on the record before us, there was nothing ambiguous about the written plea agreement, that it permitted a motion to strike on any ground, that a prosecutor's shorthand reference to a "*Romero* motion" did not and could not change the terms of the written agreement, and that the remedy was to hear Toscano's constitutional challenge, not to force him to choose between the deal the parties had struck and renewed exposure to greater charges.

■ Because a plea agreement is interpreted according to the same rules as other contracts (*Brown v. Poole* (9th Cir. 2003) 337 F.3d 1155, 1159), we presume the parties to the agreement both read and understood the writing *before* it was presented to Judge Horan for his approval—and it is for this reason that we construe Deputy Gowan's oral reference to a "*Romero* motion" to be nothing more than an abbreviated reference to the term of the agreement that gave Toscano the unrestricted right to challenge his prior strike. Certainly, this was Mr. Hobson's understanding at the time his client's plea was taken—having just negotiated a deal that permitted the constitutional challenge and believing the challenge was probably a winner, it is inconceivable that Mr. Hobson would have failed to object had he understood Deputy Gowan's reference to a "*Romero* motion" to be anything more than a shorthand reference to an unrestricted motion to strike the prior.

Once Judge Horan accepted Toscano's plea, the terms of the contract became fixed (*Brown v. Poole, supra,* 337 F.3d at p. 1159), and subsequent interpretations of that contract must be based on an objective standard in which Toscano's "reasonable beliefs" control. (*U.S. v. De La Fuente* (9th Cir. 1993) 8 F.3d 1333, 1337, fn. 7; and see *Mabry v. Johnson* (1984) 467 U.S. 504, 507–511 [81 L.Ed.2d 437, 104 S.Ct. 2543].) So viewed, the writing is plain and unambiguous, and it cannot be altered by parol evidence. (*Alling v. Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433–1435 [7 Cal.Rptr.2d 718].)

█ Were we to view the agreement as ambiguous, we would reach the same result—because plea agreements are interpreted according to the general rule "that ambiguities are construed in favor of the defendant. Focusing on the *defendant's* reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty." (*U.S. v. De La Fuente, supra,* 8 F.3d at p. 1337, fn. 7.) Since it is plain that the ambiguity perceived by Judge Martinez had more to do with a change in the cast than a question about the meaning of the written script, the only appropriate remedy is to give Toscano the hearing he should have had without giving up the terms of the agreement accepted by the People as well as by Toscano. (*People v. Kaanehe* (1977) 19 Cal.3d 1, 13–15 [136 Cal.Rptr. 409, 559 P.2d 1028] [a defendant is entitled to specific performance of a plea agreement when there is a substantial possibility that enforcement will completely repair the harm caused by the breach].)

## DISPOSITION

The judgment is conditionally reversed and the cause is remanded to the trial court with directions to hear and determine the constitutional issue raised in Toscano's motion to strike; if the motion is granted, Toscano shall be resentenced in accordance with his plea agreement; if the motion is denied, the judgment shall be reinstated and deemed final; in all other respects, the judgment is affirmed.

Mallano, Acting P. J., and Suzukawa, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.